16-22-26 Tartaglia against the Department of Veterans Affairs. Mr. Bonney. Good morning, Your Honor. May it please this court, after the dismissal of five of the six specifications under Charge 1, and the dismissal of Charges 2 and 3 against Mr. Tartaglia, the only remaining allegation against him was that on one occasion he received a short ride from a co-worker, who was a subordinate, in a government vehicle for eight miles down the road. That's what this case amounts to. At the time, Mr. Tartaglia was relatively new to the area, and the co-worker told him he knew some shortcuts to avoid traffic. Mr. Tartaglia accepted the ride, picked up the rental car, and dropped it back at an end price. As I said, the whole trip was eight miles one way and eight miles back. Is there a question in the record as to whether Mr. Motley, whether he volunteered to assist Mr. Tartaglia, or whether Mr. Tartaglia directed him to do it? What is the state of the record on that? The state of the record is incorrect, and I'm glad you spotted that, Your Honor. If you look back, because I had the same question, I look back, where did they come up with it? My client had ordered Officer Motley to do this. So I went back and I looked in the record and I found it, and it comes from the administrative judge at appendix page 85, and there I looked at what she cites as the reference. She references my client's testimony. Then you go to appendix 74 to see my client's testimony. Now she cited my client's testimony, and if you look at page 74 up at the top, and this is an important point, Judge, I think, and so I want you to take a look at that. No, I have it here. Okay. He volunteered to drive me. Lines 3 through 16. Yes, sir, exactly. He volunteered to drive me. I was still fairly new to the area, and he knew some shortcuts. He'd been around there, I think he said something like for 100 years, and so— And you say the—I want to make sure I understand this, Mr. Bonney. You say the administrative board— Administrative judge at page 85 of the appendix. Cited— His testimony as where it came from. If you look at page 85 of the appendix, that would be in the agency's— Now where is this now? Yes, it's a paragraph where you see specification 5. You see the paragraph starting there, Your Honor? Yep. And if you look at the last sentence, and you have to remember, Officer Motley did not testify to my recollection of the hearing because we had basically said, yes, my client took the ride, accepted the ride. It was improper. He did wrong. But if you look at it, the appellant admitted the specification, acknowledged that it was improper as charged, and then it says hearing C.D. Appellant's testimony. But we just read the appellant's testimony. That was not what the appellant's testimony was, was that it was offered to him. Well, doesn't that go to— What I get, the flavor I get out of that aspect, is that your client came in and said, yeah, I get it, I'm sorry, and I'll take my medicine for whatever that amounts to. And can't that just be a reference to the appellant admitted the specification and acknowledged it was improper? That's exactly what we did, Your Honor. I know. For the outset. So— Are you saying that the judge's citation back to my client's testimony was— Your Honor, that's why I looked at it, because it's not in the record. If you read my written response, we didn't acknowledge that. In other places in the testimony, we did not acknowledge that. It was never really acknowledged anywhere. Well, the word that's used in there is had, not ordered, but had a subordinate. We wanted to make sure we immediately— There was only one charge that was valid. We knew that. And we know that a mitigating factor is to admit when you're wrong. So we wanted to come forward and not really do anything, but admit that as fast and as quickly as possible. So the question is, when somebody volunteers to drive you, are you having them do it? And it's arguable that it is. Judge, yeah, it is. And it's a difficult situation. And you can imagine, you know, somebody— It was not done intentionally or maliciously. It was a bad choice by this officer, by Mr. Tarkanian. Somebody with 18 years experience. Well, at this point in time, Judge, he's 14. But, yeah, 14 years plus four years. But I appreciate that, because we're going to address that in just a minute when you ask that question that I'm sure is coming. It was a bad choice. It was a one-time event. Do you take a 14-year veteran with four years of military service and fire him for that? The thing is, he was fired for a host of violations, including five of—you know, six specifications. Only one specification. And not the most serious of the specifications by any stretch of the imagination. You would say the two least important specifications were this one and the one about using the wrong parking place. Yes, that was—and, of course, that was dismissed. Yeah. But, I mean, yes, sir. I mean, you all have been around. You know what the charges are, that they're derangeous. You know, when you're doing things that are intentionally wrong, that are malicious, that are done to profit yourself, this was a lapse of judgment. Or to manipulate the system. Manipulate. And what we have left is none of those. Thank you, Judge. That's the point we're trying to make. This is a single specification, so we go right to the issue, is this reasonable to remove him? Well, let's consider, one, all the other specifications and charges were dismissed. Two, the mitigating factors, the Douglas factors, and three things, general principles of the law, such as progressive discipline. Where's the progressive discipline for a first offense of a 14-year employee? Now, the first point on the reasonableness of the removal action is to note that the incident of accepting a ride occurred two and a half years before the proposal. Mr. Bonney, in your view, what's the importance of that? You're correct about the time gap. But what, in your view, is the significance of that? What are you using that for? Thank you, Judge. It's a great question. The potential for rehabilitation is normally shown by what the employee, whether he admitted it, and what the employee's work record is. Here, we have, in this case, 2020 vision over two and a half years to show my client's rehabilitative condition. So you're saying there wasn't any procedural problem in bringing the charge this late, but you're saying it establishes that after the offense for which he admitted was committed, he behaved himself and he established a good record, so he shows rehabilitation. Exactly, Judge. Very sharp. During the more than two and a half years, let me go over that record during that two and a half years because it's more than just what I'm trying to show you. He had not engaged in the same or similar misconduct. That's important. He did not have any other disciplinary actions that were sustained against him. He received two outstanding performance appraisals during that time frame. He earned an individual cash award, and he earned a time off award. So, yes, we have that two and a half years of 2020 vision of what he did to establish a mitigating factor of rehabilitative potential. And if you want to go back before that, I was going to also address prior to that, during his 14-year career, he had received five promotions, five promotions in 14 years. Where exactly was he for the 14 years before he came to the medical center? Four years at the medical center at the Hampton VA, where I live, and then before that he was in Syracuse at the VA. So he had 14 years of VA experience. The agency in its brief says, well, the board was correct. It said he had only four years at the agency. That's not what they say. Pardon me? That's not what they say. Well, okay. The way agencies define. Yeah. If you define agency as Hampton, it's correct. If you look at agency as his total time at the VA. And I quoted it as because both of them are VA agencies, the Syracuse VA and the other one. So clearly that's the way I took it. When the word agency comes up, that's the VA. But you're right. If it means locally, it's about four years. Now, in addition to not properly considering Mr. Tartaglia's rehabilitative potential because of that two and a half years, the board made a clear error about the four years, and this is what Judge Wallach was getting to earlier on. He had actually 14 years of service and then another four years of military service, so a total of 18 years of federal service. Why is that so significant, Mr. Bonney, is the question. The board's incorrect factual determination as to his years of service means the penalty determination and relying on Douglas factors is not supported by substantial evidence because the only thing in this case is a penalty determination. So is the penalty determination supported by substantial evidence? No. But why is four years more or less significant? Well, because in this particular case, and this is very unique and one of the few times I've seen it, and I've been doing this for a long, long time, four years of service was used against him in evaluating whether to mitigate the penalty. What the board said was, we note that the appellant's tenure with the agency was only approximately four years, which somewhat tempers their significance. And that's what drove me crazy when they said, it somewhat tempers his outstanding work record and lack of prior discipline. So in essence, what I'm saying is they actually turned around and used it against him. Now, if you had not done that, and like I said, that substantial evidence doesn't support that, the board's erroneous belief from four years, had they factored that correctly into the Douglas factors, what would you have had? Your Honor, I suggest you would have had a strongly number of factors that favored mitigation. And those factors would have included the facts I just told you about. You would have had five promotions in 14 years. You would have had multiple outstanding performance evaluations. You would have had numerous awards. So if you had actually looked and understood the 14 years, you would not have used it against him, but you would have said, this case does favor mitigation. And that's what the whole issue was. That's what was before the board. The sole factor was mitigation. Mr. Tartagli admitted his mistake, accepting a ride in a co-worker, from a co-worker in a government vehicle. He was wrong, but this one-time event of short duration was not willful, wasn't intentional, and was just a mistake. And it should not ruin his long, distinguished career. There could not have been a much better employee than Mr. Tartagli. His performance appraisals were outstanding every year. He got promoted, you know, regularly. He had awards all through him. We've attached those awards. The penalty of removal was simply not warranted. And there is substantial evidence. There is not substantial evidence supporting the board's decision. Thank you. OK. Thank you, Mr. Browning. Thank you. Let me direct you to appendix one, page one. When it says Tartaglia versus Department of Veterans Affairs agency, is that the agency? Yes, Your Honor. OK. So at page 10, when it says appellant's tenure with the agency was only approximately four years, that is the agency? I'm not comfortable saying that the board specifically meant the VA at large. But the board seems to... Of course you're not comfortable saying that. No. Because you're going to lose. No, Your Honor. OK. A couple of reasons why we don't lose on that point. The issue is whether or not the mitigating factor was considered by the deciding official. Mr. Bonney represented Mr. Tartagli... No, no, no. It is not. It's whether it was accurately considered, properly considered. Properly considered, Your Honor. And it says here, was only approximately four years, which somewhat tempers their significance. That's his time with the agency. How can that possibly be interpreted as his time with one stationing at one post when he's worked for the agency for 14 years? Tell me that. Two reasons, Your Honor. First of all, this is the first time that he was the chief of police. This is the first time that he was a supervisor. They cited a case... That's not... That's not what this says. It says his time with the agency. That's correct, Your Honor. His time with the agency... I can't add language to what they say. But he was only a chief of police at this job for four years. They don't contest that. And they cited a case, Hornbuckle, where the court specifically said, or the MSPB specifically said, the mitigated value is diminished by the fact that his extensive service occurred prior to being promoted to a supervisor position. And remember that the reason that one... Two of the reasons that this case is aggravated is that he's a chief of police and he's a supervisor. So the deciding official has discretion to determine... When you say they, you don't mean the deciding officer. I'm sorry, I don't know exactly... You said they cited a case. Oh, I'm sorry, the opposing counsel cited the Hornbuckle case, MSPB. Because what's cited here is Social Security Administration v. Carr. Oh, you're talking about the Boar's decision. Yeah. Correct. Okay, so as far as the Douglas factors... Does Carr make that distinction? No, Your Honor, but the Federal Circuit precedent says, and in Zing, the Federal Circuit says that the agency... And again, the agency has the primary discretion to manage its workforce. And it also has a discretion to weigh Douglas factors, not just to weigh the Douglas factors, but to determine the extent of the Douglas factors' relevance. And in Zing, it says that the agency does not have to consider all of the Douglas factors. Now, the deciding official did consider this mitigating factor. The deciding official considered how much time he had been working at this particular facility. He also had... Of course, the deciding official, though, had before him a panoply of charges that are no longer standing. And that's where this court has to follow. I mean, the seminal case on that issue is Lachance v. Duval. So I think you and Mr. Bonney would agree, Mr. Singley, we're in a Lachance situation, correct? Correct, Your Honor. And Lachance says, board may mitigate to the maximum reasonable penalty, okay? Correct, Your Honor. Now, I looked up the word mitigate. It says means to make more or become less severe or intense, okay? So mitigate means to make the penalty less severe or intense. Well, they didn't do that here. They kept it what it was. So the word mitigate itself seems to say you make the penalty less severe or less intense. That's the word we used in Lachance, but they didn't do that here. Okay, Your Honor. First of all, in Lachance, it was actually a reversible error for MSPB to mitigate lower than the maximum reasonable penalty where the agency was silent about what it would have done otherwise. So you have to look very closely at the procedures that are laid out in that decision. But it says mitigate. So, yeah, the decision says that the MSPB does have the authority to mitigate, but then it specifically limits the amount of mitigation that the MSPB can do in reviewing the agency's decision. But how are you mitigating a penalty if you don't make it less severe? So the question is whether they're allowed to mitigate below the maximum reasonable penalty, and it would have been a reversible error for the MSPB to do that. So what we have to say is what's the maximum reasonable penalty for this offense? Correct, Your Honor. Would you agree, Mr. Singley, that of all the charges that were originally brought, this one and the charge with respect to using the wrong parking place, in other words, putting his personal vehicle in a government vehicle parking spot, were the two least significant charges? Absolutely not, Your Honor. If you're considering that argument, imagine walking downstairs and asking an on-duty security officer to drive you to Falls Church. And that's basically what he did in this case, and that's just an aggravation of misusing— But you don't think of all the charges that were originally brought, these were the two lesser charges. I would have thought the major charges were the ones about supposedly helping these two gentlemen with whom he worked, helping Bush Gardens get a job, and arguably about using the flashing red light when the policeman stopped him. I mean, it would seem to me that looking at the charges, this one is less severe than the ones I just described. Two points on that, Your Honor. First, what this court would decide about weighing the Douglas factors is not relevant to whether or not the deciding official had a substantial basis for making their decision. Oh, no, no, I'm just saying that in terms of severity of charges. The deciding official spoke to that exact issue. He said in the initial decision for the administrative judge, the deciding official said that there were only three specifications that would have justified removal on their own. The two specifications related to the application, and then this one. And he said none of the other specifications and none of the other charges would have warranted removal on their own. So you have in the administrative judge's finding, after listening to the testimony of the deciding official, conclusive statement that from the agency's perspective, which is the only perspective that matters here, this was not the least serious charge. In fact, it was one of the most serious charges, and it would have warranted removal on its own. Does it make a difference if Mr. Tartaglia directed Mr. Motley to drive him or if Mr. Motley volunteered to drive him? The reason it doesn't make a difference, Your Honor, is because he admitted to the specification. Which says instructed. Instructed, and he admitted to that. Isn't that what we call mitigating circumstances? He admitted it, but he said he volunteered to do it. Isn't that what we call mitigating evidence? No, Your Honor, I don't think so, because the specification he's admitting that he instructed his subordinates. He's admitting it, and he's saying, look, I'm going to plead, but I'm going to tell you what actually happened, too, as well. No, Your Honor, opposing counsel just told you that the VA didn't put on testimony from the subordinate, because he agreed in advance that he was going to admit to that charge. So there was no opportunity for the VA to verify any of that editorialization of the specification. He admitted to the specification, to the words in the specification, which includes he instructed a subordinate on duty status to drive him. So the VA had no opportunity to have that witness available. I'm not saying he didn't have an opportunity. What's your evidence in the record that tells me that? I'm not saying he didn't have an opportunity, Your Honor. I'm saying that Mr. Motley didn't testify because he admitted to that. Where does it show that? Your Honor, that's not in the appendix that we submitted. I can pull up the pre-filing, what was filed by Mr. Bonney in advance of the MSPB hearing and when they were deciding which witnesses were going to testify. I'll tell you, I expect more from the Department of Justice in making arguments. Especially this 14 versus 14-year interpretation doesn't seem fair to me, and I expect the DOJ to be fair. Your Honor, we represent the agency. The agency testified at the board that they would have removed him for this offense alone, and the board twice found that testimony to be reasonable, not beyond the tolerable bounds of reasonableness. And this court reviews the MSPB for an abuse of discretion, and it's reversible error for the MSPB to mitigate below the maximum reasonable penalty. We also review for clear error, don't we? And the table of penalties says that for a first-time offense, for misuse of a government vehicle... Did you hear my question? No, Your Honor. Sorry. We also review for clear error, do we not? Yes, Your Honor. But there's no clear error in this case. There's no clear error in this case because the table of penalties... Well, shut my mouth. Fine. Mr. Singley, let me ask you, if we agree with you, that's the end of the case, okay? But if we agree there was error here, we would send it back to the board for a determination of a penalty, correct? Less than removal. Is that right? If you look at Deval, Your Honor, actually I think if the board is going to mitigate the penalty below removal, which is the listed range of penalties for misuse of a government vehicle, then the board has to give the agency an opportunity to reassess the penalty. But Deval says that the agency can testify to what it would do at the board hearing, and that's what it did here. I mean, the side official came in and said that he would have removed for that offense... Well, let me ask you, though, but what if it's determined? Obviously, you wouldn't urge this result. But what if it's determined that the penalty of removal here, weighing all the Douglas factors, was unreasonable? What should we do at that point? What would you tell us to do? Your Honor, I guess I would say that the board should provide more analysis of... Actually, the siding official should have an opportunity to weigh this particular factor. But what if we said removal is too severe a penalty? What happens then? If removal is too severe? Yeah, if we say that applying all the Douglas factors here, would we send it back for imposition of some penalty less than removal, right? If we were to instruct mitigation, does that then go through the board back to the agency, just with instructions to the board to remand to the agency for a lesser penalty? Your Honor, my reading of Duval is that the board has two options at that point. They can mitigate. I don't believe that the board has the authority to mitigate below removal, in this case, based on Duval. And so that would mean that they would have to give the agency an opportunity to reassess the penalty and specifically focus just on this specification alone. That's maybe in line, because it says in the Miguel case, Mr. Singley, it says, in light of our holding, this is if we found it, Miguel says, in light of our holding that the penalty imposed constitutes an abuse of discretion, it is necessary to remand the case to the board for determination by the agency of an appropriate lesser penalty. So, in other words, it would go back for determination of some penalty less than removal. That's what Miguel says, right? I believe so, Your Honor. So the agency would get another opportunity to assess what they think that this specification alone is worth. Less than removal. That's what Miguel says, less than removal. Well, because Miguel, in that case, they found that it was so far beyond. Well, we could find that here. You could, Your Honor, you could find it. And if we do that, it then is back for an imposition of a penalty less than removal, correct? If we're in a Miguel situation. Correct, Your Honor. Okay. But again... And how long has he been away? I believe that this decision to remove was in 2014, I thought. Right, so the decision was in July of 2014. So he's been away for several years. Coming up on three years. So we're in a kind of a time served situation. Yes, Your Honor. Okay. Well, what would his status be if we send it back for less than removal? For less than removal, Your Honor, I think at this point he would be entitled to back pay for the period of time that he's been removed. But I mean, will... I mean, theoretically, the agency, if we did that, the agency could say impose a suspension, a retroactive suspension. He would be suspended for 30 days. That would be taken out of his back pay. Correct. And then if this is not... If he's retired, received any benefits, then some of those benefits might be subtracted from the amount of back pay that he receives. But yes, Your Honor, so the agency would have another opportunity. They could say that suspension was warranted, 30-day suspension. Yeah. Okay. Any more questions? All right. Thank you, Mr. Singley. Mr. Bonney, you have the last word. I'll be as brief as possible. This court seems to have good people in this case. Judge Wallach, I would just say exactly that. We were tripping over ourselves just trying to admit that we did something wrong. We wanted that mitigating factor. We knew we had done something wrong. We were saying we did. Judge Schauer, you raised the Miguel case, and you're right. It says that, and you can remand it. The whole purpose of the... In other words, we can't dictate a penalty. If we agree with your position, we can't dictate the penalty ourselves. It has to go back. What would happen with the... Mr. Singley seems to be saying, and I think he may be correct, that if we go that route, we would send it to the board to send it to the agency to determine a lesser penalty. Now, Judge, what would happen is, first of all, if you can dictate a penalty, this court has. In this case, it seems like to me the obvious penalty is a 30-day suspension.  You can dictate the penalty. You can say, we're going to remand it back to the board, and the board will issue its own decision after reviewing the things. They do not have to send it back. It never goes back to the agency. It would go back to the administrative judge. It's going to stay within the judicial ranks at all times. The agency is not going to have any further input on it, but considering the length of time that he's been out, and what I think is pretty much a 30-day suspension is a considerable suspension for this misconduct. I mean, I can see myself walking out and say, hey, can I have a ride to somebody, and they give me a ride. Next thing you know, I'm charged. That's not what we want in the government. We don't want people ordering people around. We don't want them ordering Fairfax. That wasn't the case. He's just trying to save a little time because of traffic. Traffic's bad here. Thank you, Your Honors. I do appreciate your time. But you do have authority to issue that decision. Thank you both. The case is taken under submission.